UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **DAVID BARRETT,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 5:20-CV-269-MAS |
| v. ) | |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff David Barrett ("Barrett") appeals the Commissioner's denial of disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA").[1] Before the Court are the parties' cross-motions for summary judgment. [DE 25, 27]. For the reasons discussed below, the Court finds that Administrative Law Judge ("ALJ") Karen Jackson applied the proper legal framework and supported her non-disability finding with substantial evidence in the record. The Court grants the Commissioner's motion and denies Barrett's competing motion.

---

[1] The legal standard DIB claims mirrors that of Supplemental Security Income ("SSI"). *See Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. 1991) (table). "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013), *report and recommendation adopted*, 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010). The Court generally references SSI and DIB case law interchangeably, mindful of the particular regulations pertinent to each type of claim.

I.      **LEGAL FRAMEWORK**

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decision makers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire (lengthy) record in search for facts supporting under-developed arguments. [*See* DE 16 (General Order No. 13-7) (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion.

2

*Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different original result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the proper five-step sequential analysis as conducted by an ALJ in determining disability status. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. §§ 416.920(a), 404.1520(a). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. §§ 416.920(a)(4)(i), 404.1520(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii). In the fourth step, the ALJ determines the claimant's residual functional capacity ("RFC") and assesses whether the claimant can perform past relevant work. *Id.* at §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv). Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* at §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there.

Because Barrett's claim was filed after March 27, 2017, the ALJ must consider and articulate medical opinions and prior administrative medical findings as outlined in 20 C.F.R. § 404.1520c, as set forth in pertinent parts below:

(a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. [. . .] We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

(b) How we articulate our consideration of medical opinions and prior administrative medical findings. We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:

(1) Source-level articulation. [. . .] [W]e will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

(2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider . . . . [W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings . . . . We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section[.]

[. . .]

(c) Factors. We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case:

(1) Supportability. [. . . ]

(2) Consistency. [. . . ]

(3) Relationship with the claimant. [. . . ]

(i) Length of the treatment relationship. [. . . ]

(ii) Frequency of examinations. [. . . ]

(iii) Purpose of the treatment relationship. [. . . ]

(iv) Extent of the treatment relationship. [. . . ]

4

>    (v) Examining relationship. [. . . ]
>
>    (4) Specialization.
>
>    (5) Other factors. We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, ***we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.***
>
>    (d) Evidence from nonmedical sources. We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section.
>
> 20 C.F.R. § 404.1520c (emphasis added).
>
> In assessing a claimant's RFC, the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make findings. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 16-3p ("SSR 16-3p"). A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 16-3p.

*Sikes v. Kijakazi*, 2021 WL 3553490, at *9 (W.D. Ky. Aug. 11, 2021).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Barrett protectively filed an application for Title II DIB benefits on April 12, 2017, alleging disability beginning November 30, 2014. [Administrative Transcript ("Tr.") at 20, in the record at DE 21-1]. Barrett was 41 years old when he applied for benefits and 38 years old at the alleged onset date. [Tr. at 144; DE 25-1 at Page ID # 477]. Barrett earned a general equivalency diploma. [Tr. at 463]. He has prior work experience as an exterminator. [Tr. at 27]. A very brief overview of his medical treatment relevant to his disability claim is provided below and can be found in the record at DE 21.

5

Barrett claimed disability based on physical and mental limitations. Initially he complained of asthma, chronic obstructive pulmonary disease ("COPD"), emphysema, and as well as anxiety and depression. Barrett also had a history of a lumbar spine compression fracture that he claimed additionally limited his abilities. Barrett argues his conditions worsened throughout the pendency of his DIB application.

Barrett's relevant medical history has significant gaps in treatment and assessments. In March 2014, Barrett presented to the Saint Joseph Health ("SJH") emergency department in moderate respiratory distress with diminished breath sounds and moderate wheezes. SJH treated Barrett for an asthma attack and advised to follow up with his primary care provider. [Tr. at 289-293].

Six months later, in November 2014, Barrett again presented to the SJH emergency department with asthma and wheezing. Barrett stated his breathing difficulties seemed to be exacerbated when drinking alcohol. The SJH provider diagnosed Barrett with asthma and pneumonia, provided treatment and again recommended he see his treating physician. [Tr. 245-248].

In September 2016, Barrett was again diagnosed with moderate persistent asthma without complication. He also reported having low back pain and stiffness at that time; on examination, however, Barrett possessed a normal gait, normal muscle strength and tone, and a normal range of motion, with no tenderness or swelling of his extremities. [Tr. at 315-318].

Almost one year later, in August 2017, Barrett presented at the SJH emergency department due to a fall resulting in back, abdominal, and rib pain. [Tr. at 334-338]. A chest x-ray revealed pneumonia in the right lung and a fatty enlarged liver. [Tr. at 337]. The following month a pulmonary function report was issued for the Department of Disability Determination Services

6

that resulted in a diagnostic impression of severe chronic obstructive pulmonary disease (COPD), with mild restrictive pulmonary disease. Use of a bronchodilator (albuterol) resulted in improvement of Barrett's performance on the tests, however. [Tr. at 341-342].

It appears Barrett's next medical treatment was in April 2018, when he was hospitalized after his family found him unresponsive. [Tr. at 353]. Barrett spent five days in the hospital before leaving against medical advice. [Tr. at 352-354]. The record indicates Barrett was drinking upon admission to the hospital, his potassium and phosphorous levels required additional treatment, he had elevated liver enzymes and jaundice, and a history of liver disease. [Tr. at 352-354]. The emergency department performed a CT scan of Barrett's lumbar spine which revealed an L1 compression fracture without significant retropulsion. [Tr. 358]. Five days after Barrett left SJH against medical advice, he presented to University of Kentucky emergency department with abdominal pain. [Tr. at 368]. The emergency department performed a paracentesis and drained "a significant amount of fluid" from Barrett's abdominal cavity. [Tr. at 367-368].

In May 2018, Barrett was treated at the University of Kentucky Gastroenterology department. At that visit, Barrett reported drinking twelve to fourteen sixteen-ounce beers daily for about fourteen years. [Tr. 375-382]. UK Gastroenterology conducted an ultrasound, with findings consistent with cirrhosis and the possibility of acute pancreatitis. Barrett did not follow up with UK Gastroenterology until January 2019, when he reported he was doing much better and had stopped drinking. [Tr. 385-391]. Another abdominal ultrasound in February 2019 confirmed cirrhosis of the liver. [Tr. at 395].

Barrett also complained of anxiety throughout the relevant time period, though there is nothing in the record reflecting mental health treatment. [Tr. 269, 305, 376, 392].

Three state agency physicians offered opinions regarding Barrett's limitations and RFC. On June 21, 2017, state agency psychological consultant, Lea Perritt, Ph.D., indicated that Plaintiff did not have a medically determinable mental impairment. [Tr. at 61]. On reconsideration, Paul Ebben, Psy.D., affirmed the finding of no medically determinable mental impairment on January 8, 2018. [Tr. at 75].

On January 8, 2018, P. Saranga, MD, opined Plaintiff could: occasionally lift and/or carry 20 pounds and could frequently lift and/or carry 10 pounds; stand and/or walk for six hours and sit for six hours in an eight-hour workday; push and/or pull an unlimited amount, other than for lift and/ or carry; frequently climb ramps/stairs and occasionally climb ladders, ropes, and scaffolds; frequently balance, stoop, kneel, crouch, or crawl. T 76-77. Plaintiff could avoid concentrated exposure to extreme cold/heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards. T 78.

The ALJ conducted an administrative hearing (at which Barrett was present and testified) on April 24, 2019, and denied Barrett's claims on June 21, 2019. [Tr. at 20-29]. In applying the five-step sequential evaluation, the ALJ found at Barrett has not performed substantial gainful activity since November 30, 2014, the alleged onset date. [Tr. at 22]. She found that Barrett has severe impairments including asthma/COPD, cirrhosis with history of hepatic encephalopathy and ascites, history of L1 compression fracture, anxiety, and a history of substance use disorder (alcohol). [Tr. at 22]. However, the ALJ concluded that the severe impairment(s), or combination of impairments, do not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (a "listing"). [Tr. at 22]. The ALJ found Barrett is unable to perform his past relevant work as an exterminator, but he can perform other jobs existing in significant numbers in the national economy. [Tr. at 27-28].

On April 21, 2020, the Appeals Council denied Barrett's request for review of the ALJ's decision, finding there was no abuse of discretion, error of law, that the decision was supported by substantial evidence and not contrary to public policy. [Tr. at 1-2]. Barrett subsequently filed this action on June 23, 2020 [DE 1], and the parties filed cross-motions for summary judgment in February and March 2021 [DE 25, 27]. This matter is now ripe for review and resolution.

### III. ANALYSIS

Barrett makes the single argument that the ALJ's non-disability determination is not supported by substantial evidence. Specifically, Barrett contends that the ALJ improperly rejected the opinions of treating and examining sources without adequate explanation "failed to develop the record and instead crafted the RFC out of whole cloth." [DE 25-1 at Page ID # 479]. The Court disagrees.

**A.  THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY DETERMINATION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE.**

Per the controlling regulations, the ALJ did not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinions(s), including those from Barrett's own medical sources. The ALJ did not find persuasive the opinions of the state psychological consultants Lea Perritt, Ph.D. and Paul Ebben, Psy.D., who did not find Barrett's anxiety to be severe and found him to have no mental limitations. The ALJ further found the opinion of the state agency physical consultant P. Saranga, MD to be unpersuasive. Dr. Saranga assigned Barrett light exertional capacity. [Tr. at 27]. Importantly, the ALJ noted "both the psychological consultant and the physical consultants did not have the full record before them, which when reviewed necessitates the RFC [set forth] above of less than sedentary with metal limitations." [Tr. at 27]. *See* 20 CFR § 404.1520c(c)(5) ("When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether

9

new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.").

The ALJ specifically noted the state psychological consultants' opinions were not supported by or consistent with the record because "[t]he record shows claimant with a history of anxiety (1F49; 3F/2; 11F/9; 12F/10) and with complications from her [*sic*] cirrhosis that also require mild to moderate mental limitations." [Tr. at 27]. 20 CFR § 404.1520c ("The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be.").

The ALJ also considered Barrett's statements on his disability application, his hearing testimony, and the medical records available to her. [Tr. at 22-27]. The ALJ explicitly cited to Barrett's hearing testimony regarding his breathing issues, his hospitalization due to alcohol use/liver issues in 2018, his sobriety over the past year, his lumbar fracture and pain, and his visual hallucinations that he attributed to his liver condition. [Tr. at 25]. The ALJ also discussed Barrett's testimony regarding his physical and mental limitations, which included: low stamina, having to lie down several times per day, feeling confused, panic attacks, discomfort around people, inability to walk for more than ten minutes or stand for more than fifteen minutes. [Tr. at 25].

However, after considering all of this testimony and the evidence in the record, the ALJ found that Barrett's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statement concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" [TR. at 26]. The ALJ supported this determination citing to testimony

that Barrett testified he could lift objects up to ten pounds, back pain that is treated with over-the-counter medication, and the fact that the "longitudinal record demonstrates claimant [*sic*] asthma being controlled with medication[.]" [TR. at 26].

The crux of Barrett's argument is that the medical opinions in the record did not consider his cirrhosis and other liver problems that resulted in hospitalizations and other treatment in 2018 and 2019. The argument fails, however, because the ALJ specifically did take those medical conditions and records into account when making her RFC determination. And, in fact, after consideration of the entire record evidence and viewing Barrett's application in the most favorable light, the ALJ determined that Barrett was subject to the most restrictive sedentary level of exertion with additional specific postural and environmental limitations—more restrictive that the limitations assessed by the consultative examiners. [Tr. at 22]. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014)(affirming the ALJ's RFC finding where the ALJ adopted more restrictive postural functional limitations than the state agency reviewing physicians opined necessary).

Additionally, the regulations do not compel the ALJ to recontact medical consultants or order additional consultative examinations, as Barrett suggests. An ALJ is required to "assess a claimant's RFC based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). No medical source opinion is alone conclusive on this issue, and the ALJ properly considers all of the evidence before him or her. *See* 20 CFR § 404.1520c; *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015).

Regarding Barrett's cirrhosis and liver disease records from 2018 and 2019, that were not before the consulting examiners, the ALJ scrutinized them as follows:

> Again, there is a gap in medical records until April 18, 2018 when claimant is hospitalized with complications due to cirrhosis of the liver and liver failure. His

11

> MELD score, which classifies end-stage liver disease, indicated a 52.5% mortality. He left the hospital on April 23, 2018 against medical advice. His MELD score had gone down to 25 at this time but was still seen as significant. . . . . A paracentesis was performed at this time where seven liters of fluid were drained by claimant was still left with several pockets of fluid. (11F/1-2). On May 2, 2018, claimant was seen at the University of Kentucky Gastroenterology Department. An ultrasound was performed that showed a nodular liver consistent with cirrhosis and small volume ascites. Treatment notes state that claimant admitted to drinking 12-14 beers daily for fourteen years. However, he stated that had [sic] not drank since being admitted to the hospital on April 18, 2017, when he learned about his cirrhosis. (11F/9). Claimant's MELD score was a 9 at this time and his acute hepatitis panel was negative. (11F/9-14). On May 5, 2018, claimant returned to the emergency room but was see to have "very mild" ascites note requiring paracentesis. (11F/7-8). Claimant was again see at UK Gastroenterology in January 2019 after multiple cancellations on his part. He reported doing much better, denied any recent hospitalization, and maintained that he had stopped drinking. He denied any abdominal pain or swelling and stated that he was following a low sodium diet. He denied any recent episodes of confusion. (12F/3). His MELD score had lowered to seven and he had no ascites. (12F/5-8). Progress notes from March 2019 showed much the same as January: still reported doing well, no episodes of confusion, no indication for paracentesis, and no ascites on his abdominal ultrasound. (12F/10-16). At the disability hearing, claimant endorsed his continued sobriety, at that time over a year. He also reported no new complications with his liver.
>
> [. . .]
>
> In sum, while the claimant has alleged that he is completely disabled by his impairments and their limiting effects, the objective evidence does not fully corroborate the allegations. In considering the intensity, persistence, and limiting effects of the claimant's symptoms, they may produce some of the functional limitations she [sic] speaks of, but not to the extent that he is unable to satisfy the demands of regular work activity on a sustained basis. The reasonable limitations derived from the medical evidence of record and the claimant's testimony are accounted for in the residual functional capacity as explained above.

[TR. at 26-27].

The regulations and Sixth Circuit case law make clear that RFC findings are for the adjudicator, not a medical professional, to make. *See* 20 C.F.R. § 404.1546(c) (at the hearing level, the ALJ is responsible for assessing RFC); *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015) ("The district judge correctly decided that 'neither the applicable regulations nor Sixth Circuit law limit the ALJ to consideration of direct medical opinions on the issue of RFC.'").

"Moreover, an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). The ALJ carefully considered the consultative medical opinions, Barrett's testimony, and the treatment records before her (including those that occurred after the consultative medical exams) to render her RFC determination. The Court thus finds the determination was supported by substantial evidence in the record.

Finally, at step five of the analysis, the ALJ relied heavily on the vocational expert ("VE"), William Braunig, in making his disability determination, accepting the VE's hearing testimony as "an accurate and authoritative assessment of the skill and exertional level of the claimant's past work and the ability required to perform it." [Tr. at 27]. The ALJ further agreed with the VE after reviewing "the evidence and a comparison the physical and mental demands of this past relevant work to the residual functional capacity" that Barrett could not perform his past relevant work as an exterminator. [Tr. at 27]. *See* 20 C.F.R. § 404.1560(b)(1). Barrett argues this, too, was in error because the residual functional capacity was not supported by substantial evidence. However, as discussed above, the Court rejects Barrett's argument regarding the ALJ's RFC determination. Thus, the Court finds the ALJ's determination that a significant number of jobs remained in the national economy that Barrett retained the capacity to perform and her conclusion that Barrett was not disabled were supported by substantial evidence. [Tr. at 28-29].

## IV.    CONCLUSION

For all of the reasons discussed herein, the Court finds that the ALJ's decision was supported by substantial evidence. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir.2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision.").

13

**IT IS ORDERED** that the Commissioner's motion for summary judgment [DE 27] is **GRANTED** and Barrett's competing motion [DE 25] is **DENIED**. A corresponding Judgment shall follow.

This the 26th day of January, 2022.



Signed By:
Matthew A. Stinnett   MAS
United States Magistrate Judge